UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TIME WARNER CABLE OF NEW YORK CITY,

                              :

                  Plaintiff,                      06 Civ. 2745 (LBS)(DF)

                              :

      -against-                      **REPORT AND**

                              :           **RECOMMENDATION**

PEDRO SANCHEZ a/k/a PEYIN SANCHEZ,

                              :

                Defendant.
---------------------------------------------------------------X

**TO THE HONORABLE LEONARD B. SAND, U.S.D.J.:**

## INTRODUCTION

       On April 7, 2006, plaintiff Time Warner Cable of New York City ("Plaintiff") filed a complaint with this Court, alleging violations of the Communications Act of 1934 by defendant Pedro Sanchez a/k/a Peyin Sanchez ("Defendant"). On May 10, 2006, Plaintiff served copies of the Summons and Complaint upon Defendant pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure. Defendant has not appeared, answered or otherwise moved with respect to the Complaint.

       On June 27, 2006, Judge Leonard B. Sand granted a default judgment against Defendant, and referred the matter to me to conduct an inquest and to report and recommend concerning Plaintiff's damages. For the reasons that follow, I recommend that, on the default judgment, Plaintiff be awarded damages, attorneys' fees, and costs from Defendant, as calculated below.

## BACKGROUND

       As alleged in Plaintiff's Complaint, and supported as necessary by the documentation submitted by Plaintiff in support of its Proposed Findings of Facts and Conclusions of Law, the relevant facts are as follows:

Plaintiff, which maintains business offices in New York, is a division of Time Warner Entertainment Company, L.P., a limited partnership organized in Delaware.  (Plaintiff's Complaint, dated Mar. 6, 2006 ("Compl.") (Dkt. 1), ¶ 4.)  According to Plaintiff, at all relevant times, Defendant resided at 1760 Madison Avenue, Apt. 302, New York, New York.  (*Id.* ¶ 5.)

Pursuant to its franchise agreements with the City of New York, Plaintiff constructs, operates, and maintains cable television systems in various parts of New York City, including the area at and surrounding Defendant's residence.  (Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated Aug. 15, 2006 ("Proposed Findings") (Dkt. 11), ¶ 4.)  Plaintiff provides cable television programming and services to those who subscribe to and pay for them. (Compl. ¶ 6.)

Subscribers pay a monthly fee for the specific level of programming purchased from Plaintiff, and may choose among different tiers of programming packages.  (*Id.* ¶ 7.)  The "Basic" and "Standard" tiers of service are packages of programming services, which a subscriber receives at a monthly rate.  (*Id.*)  Subscribers may also elect to purchase one or more "premium" channels for an additional monthly charge per service.  (*Id.*; Affidavit of Thomas Allen, sworn to Aug. 15, 2006 ("Allen Aff."), ¶ 3.)  Typically, this service costs an additional $7.00 to $13.00 per month per service.  (Compl. ¶ 15; Allen Aff. ¶ 11.)  The full range of premium programming is offered by Plaintiff at an average cost of $85.00 per month.  (Compl. ¶ 15; Allen Aff. ¶ 11.)

In addition, Plaintiff offers customers programming services which provide movies, sporting events and other entertainment that customers may order on a pay-per-view basis. (Compl. ¶ 8; Proposed Findings ¶ 6.)  Pay-per-view services typically range in price from

approximately $4.00 to $49.00 per selection, on a per-event or movie basis.  (Compl. ¶ 15; Allen Aff. ¶ 11.)

An individual wishing to purchase any of Plaintiff's services is provided with a piece of equipment described by Plaintiff as a "converter-decoder," which authorizes specific levels of programming.  (Proposed Findings ¶ 9; Allen Aff. ¶ 7.)  Plaintiff receives signals for nearly all of its services, including premium and pay-per-view programming, from orbiting satellites and local radio towers, and then retransmits the signals to its subscribers through cable wiring and equipment.  (Proposed Findings ¶ 8; Allen Aff. ¶ 6.)  To prevent subscribers from receiving programming services for which they have not paid, Plaintiff encrypts or "scrambles" the signals for its services.  (Compl. ¶ 11; Proposed Findings ¶ 9.)  When in a scrambled mode, programming services not purchased remain distorted and not viewable on the subscriber's television set.  (Compl. ¶ 11; Proposed Findings ¶ 9.)  The converter-decoders "descramble" the programming services purchased by the particular subscriber.  (Proposed Findings ¶ 10; Allen Aff. ¶ 8.)

Cable subscribers can purchase unauthorized devices or modify their existing converter-decoders so as to be able to intercept and receive Plaintiff's signals and view programming for which they have not paid.  (Compl. ¶ 14; Proposed Findings ¶ 12; Allen Aff. ¶ 10.)  By using an unauthorized converter-decoder, an individual would be able to access over $100 worth of premium and pay-per-view services per month.  (Compl. ¶ 15; Proposed Findings ¶ 13; Allen Aff. ¶ 11.)  Lost revenue resulting from such "piracy" negatively impacts the ability of cable television services to provide high quality programming to its subscribers.  (Compl. ¶ 16; Proposed Findings ¶ 14; Allen Aff. ¶ 12.)  Furthermore, cable theft creates an unfair

disadvantage to honest, paying subscribers, who must subsidize acts of piracy.  (Compl. ¶ 16; Proposed Findings ¶ 14; Allen Aff. ¶ 12.)

Plaintiff obtained information regarding Defendant from an anonymous call in November 2003.  (Proposed Findings ¶ 15; Allen Aff. ¶ 14.)  Plaintiff hired ACI Investigations, Inc. ("ACI"), a private investigations firm, to investigate Defendant's alleged sale and use of unauthorized descramblers.  (Proposed Findings ¶ 16; Allen Aff. ¶ 15.)  On November 12, 2003 and December 10, 2003, an ACI investigator purchased from Defendant a total of two unauthorized converter-decoders, which provided unauthorized access to all of the premium and pay-per-view services offered by Plaintiff.  (Proposed Findings ¶¶ 17-25.)

At the time of the first exchange, the undercover investigator went to Defendant's address and gained entry into Defendant's apartment building.  (*Id.* ¶ 17; Affidavit of Roy Radzinsky, Jr., sworn to Aug. 2, 2006 ("Radzinsky Aff."), ¶ 4.)  When the investigator knocked on the door to Defendant's apartment, a woman answered.  (Proposed Findings ¶ 17; Radzinsky Aff. ¶ 4.)  The investigator asked to speak with Defendant, and Defendant came to the door. (Proposed Findings ¶¶ 17-18; Radzinsky Aff. ¶¶ 4-5.)  The investigator stated that he wished to purchase a cable descrambler, and Defendant invited the investigator inside his apartment to test out the cable descrambler that was connected to Defendant's television.  (Proposed Findings ¶¶ 18-19; Radzinsky Aff. ¶¶ 5-6.)  The investigator was then able to confirm that, although the subscriber listed at Defendant's residence only paid for a "Basic" service plan, Defendant had been able to gain access to Plaintiff's premium and pay-per-view services through an unauthorized descrambling device.  (*See* Proposed Findings ¶ 16; Allen Aff. ¶ 15.)

The investigator left the apartment building in order to find an ATM, so that he could obtain cash to pay for the descrambler.  (Proposed Findings ¶ 20; Radzinsky Aff. ¶ 7.)  When the investigator returned to Defendant's apartment building, he gave Defendant $160 in exchange for the descrambler.  (Proposed Findings ¶ 21; Radzinsky Aff. ¶ 8.)  Defendant handed the investigator the descrambler in a black plastic bag in the hallway of the building near the lobby on the main level.  (Proposed Findings ¶ 21; Radzinsky Aff. ¶ 8.)  Even though Defendant told the investigator that the price was $150 per descrambler, Defendant did not give the investigator change.  (Proposed Findings ¶¶ 20-21; Radzinsky Aff. ¶ 8.)  When the investigator asked Defendant for a business card so that he could contact Defendant for future purchases, Defendant gave the investigator a business card for Defendant's airport transportation services.  (Proposed Findings ¶ 21; Radzinsky Aff. ¶ 8.)  Defendant also said future purchases were possible. (Proposed Findings ¶ 21; Radzinsky Aff. ¶ 8.)

For the second sale, the investigator called Defendant and requested a second descrambler.  (Proposed Findings ¶ 22; Radzinsky Aff. ¶ 9.)  Defendant told the investigator that he could sell it to the investigator later that afternoon.  (Proposed Findings ¶ 22; Radzinsky Aff. ¶ 9.)  The parties agreed to meet at Defendant's apartment building.  (Proposed Findings ¶ 23; Radzinsky Aff. ¶ 10.)  Around 3:30 p.m., the investigator gave Defendant $150 in exchange for a second descrambler.  (Proposed Findings ¶¶ 24-25; Radzinsky Aff. ¶¶ 11-12.)

On April 7, 2006, Plaintiff commenced this action, alleging that Defendant had violated the Communications Act of 1934.  (Compl. ¶¶ 1-2, 23-33.)  Plaintiff sought declaratory and injunctive relief, as well as statutory damages, attorneys' fees, and costs.  (*Id*. at 8-9.)  Defendant failed to respond to the Complaint, and the Court issued a default judgment against Defendant on

June 27, 2006.  (Default Judgment, dated June 27, 2006 (Dkt. 7).)  On that same date, the matter

was referred to Magistrate Judge Peck for the purpose of conducting an inquest concerning

Plaintiff's alleged damages.  (Dkt. 6.)  On June 30, 2006, the referral to Judge Peck was

reassigned to me.  (Dkt. 8.)

By Scheduling Order dated July 18, 2006, I directed Plaintiff to serve and file its

Proposed Findings of Fact and Conclusions of Law no later than August 17, 2006.  (Dkt. 9.)  I

further directed that Plaintiff include, with the papers it would serve on Defendant, a copy of the

Court's Scheduling Order.[1]  In that Order, I cautioned Defendant that if, by September 18, 2006,

he did not respond to Plaintiff's submission or contact my chambers in writing to request an in-

court hearing, it would be my intention to issue a report and recommendation concerning

damages on the basis of Plaintiff's written submissions alone.

On August 17, 2006, Plaintiff filed its Proposed Findings, together with supporting

papers and a certificate of service, indicating service on Defendant by Federal Express and first

class mail.  To date, Defendant has not responded to Plaintiff's submissions, nor has he

requested a hearing with respect to damages.  I therefore issue this report and recommendation

based solely on Plaintiff's submissions.

## DISCUSSION

In its Proposed Findings and supporting documents, Plaintiff requested that it be awarded

$15,000.00 in statutory damages and $4,523.12 in costs and attorneys' fees.  (Proposed Findings

¶ 42; Affirmation of Michael D. Cassell, Esq., sworn to Aug. 15, 2006 ("Cassell Aff."), ¶¶ 2,

---

[1] Although the Court itself attempted to provide Defendant with the Scheduling Order,
the copy of the Order mailed by the Court to Defendant, at the address provided by Plaintiff, was
returned as undeliverable and unforwardable.

11.)  Based on the Affidavit of Roy Radzinsky, Jr., Plaintiff seeks an award of fees for ACI's

services in the amount of $2,428.29 (Radzinsky Aff. ¶ 14), and based on the Affirmation of

Michael Cassell, Esq., Plaintiff seeks an award of attorneys' fees in the amount of $1,812.50 and

costs in the amount of $282.33.  (Cassell Aff. ¶¶ 9-10.)[2]  Without a response from Defendant as

to the damages issue, this Court must assess whether Plaintiff has sufficiently demonstrated the

amounts in question.

Although "a default judgment entered on well-pleaded allegations in a complaint

establishes a defendant's liability," it does not reach the issue of damages.  *Bambu Sales, Inc. v.

Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v.

Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  A

plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See

Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1009 n.12 (S.D.N.Y. 1986) (plaintiff must introduce

evidence to prove damages suffered and the court will then determine whether the relief flows

from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Though courts may

hold hearings to assess these damages, a hearing is not required where a sufficient basis to make

a calculation exists.  *See* Fed. R. Civ. P. 55(b)(2) (a court may conduct hearings on damages "as

---

[2] Although, at one point in its Proposed Findings, Plaintiff states that its attorneys' fees
and costs total $7,892.13 (Proposed Findings ¶ 28), it appears that this is a typographical error,
as Plaintiff later provides the figure of $4,523.12 for its fees and costs (*see id.* ¶ 42), and this
second figure is supported by the evidence and calculations that Plaintiff has submitted with its
application (*see* Cassell Aff. ¶¶ 9-11).  In addition, it appears that Plaintiff has made a minor
error in its Proposed Findings in stating the amount of its disbursements as $282.23 (see
Proposed Findings ¶ 41), as the submitted evidence shows its disbursements to total $282.33
(Cassell Aff. ¶¶ 9-10).  At bottom, it is the Court's understanding that Plaintiff is actually
seeking attorneys' fees and costs in the amount of $4,523.12, which is comprised of $1,812.50
for legal fees, $282.33 for disbursements, and $2,428.29 for ACI's services.  (*See* Proposed
Findings ¶¶ 41-42; Radzinsky Aff. ¶ 14; Cassell Aff. ¶¶ 2, 9-11.)

it deems necessary and proper"); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (district judges are given much discretion to determine whether an inquest on damages need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

## I.        PLAINTIFF SHOULD BE AWARDED $13,000.00 IN STATUTORY DAMAGES.

The unauthorized interception and reception of any cable television programming services provided through a cable system is an express violation of 47 U.S.C. § 553(a)(1).[3]  *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1003-07 (2d Cir. 1993).  Pursuant to 47 U.S.C. § 553(c)(3)(A), there are two means by which a court may determine the proper measure of damages for such a violation.

On the one hand, Section 553(c)(3)(A)(i) states that "the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages . . . ."  On the other hand, pursuant to Section 553(c)(3)(A)(ii), "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just."

In addition, pursuant to Section 553(c)(3)(B), "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000."  Finally, Section

---

[3] 47 U.S.C. § 553(a)(1) provides, in pertinent part:  "No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

553(c)(3)(C) states that, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." In this case, Plaintiff has elected to recover statutory damages, under Section 553(c)(3)(A)(ii), and has sought the statutory maximum of $10,000, as well as an additional $5,000 on account of Defendant's willful violation of the law for the purpose of private financial gain. (*See* Proposed Findings ¶¶ 35-39.)

Pursuant to Sections 553(c)(3)(A)(ii) and 553(c)(3)(B), the Court has discretion to award statutory damages in an amount it determines "just." Because Section 553(c)(3)(A)(ii) "provides for statutory damages as an alternative to a computation based on actual damages and violators' profits," some courts have stated that a judge may consider the pecuniary loss sustained by the plaintiff (as a result of the defendant's violation) to determine the plaintiff's damages. *See Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (awarding plaintiff $10,000 under Section 553, as that amount approximated the actual value of free services that defendant may have received over six years); *see also Cablevision Sys. N.Y. City Corp. v. Miller*, No. 01 Civ. 4355 (LLS)(FM), 2002 U.S. Dist. LEXIS 147239, at *11 (S.D.N.Y. July 23, 2002) (noting that, under 47 U.S.C. § 605, "[t]o determine where on the statutory damages spectrum the award against [defendant] should fall, it is appropriate to consider first the value and duration of the unauthorized cable reception"); *TWC Cable Partners v. Bravo*, No. 94 Civ. 3250 (JMA), 1996 U.S. Dist. LEXIS 26988, at *11 (E.D.N.Y. Mar. 29, 1996) (listing factors to be considered in determining plaintiff's damages under Section 605, including "pecuniary loss sustained by the victim as result of the offense, the financial resources of the

defendant . . ., as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose").[4]

Here, while it is true that Defendant's default has prevented Plaintiff from gathering evidence in support of its damages claim, Plaintiff provides no basis for this Court to calculate the actual damages it suffered as a result of Defendant's conduct.  Although Plaintiff proffers evidence, through its investigator, that Defendant himself had the use of an illegal converter-decoder, the Court has no information before it regarding the length of time during which Defendant was able to gain unauthorized access to Plaintiff's premium programming.  Nor has Plaintiff informed the Court of the monthly fee paid by Defendant for Plaintiff's Basic cable services, or the length of time for which Defendant received these services – information that

---

[4] There is significant "overlap" between the substantive terms of 47 U.S.C. § 553, which Plaintiff invokes in this case, and 47 U.S.C. § 605.  *Cablevision Sys. Corp. v. Muneyyirici*, 876 F. Supp. 415, 425 (E.D.N.Y. 1994); *see also Lokshin*, 980 F. Supp. at 112 (noting that "when pay television programming is transmitted over both cable and satellite mediums, both statutes apply") (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 130 (2d Cir. 1996)).  Section 553 provides, in pertinent part:  "No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so . . . ."  Similarly, Section 605 provides in pertinent part:  "No person not being authorized by the sender shall intercept any radio communication . . . ."  The Second Circuit has held that Section 605 "not only prohibits unauthorized interception of traditional radio communications, but also communications transmitted by means of new technologies," including satellite cable television.  *Sykes*, 75 F.3d at 133.  Accordingly, although the Court is limited here to awarding damages under Section 553, which does not permit statutory damages at as high a level as Section 605, *see Time Warner Cable v. Barnes*, 13 F. Supp. 2d 543, 549 (S.D.N.Y. 1998); *see also* 47 U.S.C. § 605(e) (allowing for damages "for *each* violation . . . in a sum of *not less than* $10,000" where defendant "sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable") (emphasis added), it is still appropriate for the Court to consider the factors and analyses deemed relevant to damages in cases arising under Section 605.  *See Joe Hand Promotions, Inc. v. Canela*, No. 03 Civ. 0200 (ARR), 2005 WL 4677826, at *3 n.5 (E.D.N.Y. July 6, 2005) (finding that "the use of factors and assessments of statutory damages under Section 553 by courts in the past are persuasive in the case at hand," where plaintiff sought damages under Section 605).

some courts have found useful in assessing damages. *See Cablevision Sys. N.Y. City Corp. v. Santiago*, No. 02 Civ. 322 (DLC)(DF), 2003 U.S. Dist. LEXIS 6207, at *15-*18 (S.D.N.Y. Mar. 17, 2003) (in estimating actual damages, court considered difference between the amount defendant was paying plaintiff to receive authorized cable services and the cost of plaintiff's most expensive premium package; additionally, court considered the period of time that defendant was a subscriber as relevant to the question of how long defendant was stealing cable); *Cablevision Sys. N.Y. City Corp. v. Landron*, No. 02 Civ. 2957 (LAK)(DFE), 2003 U.S. Dist. LEXIS 24999, at *3-*4, *7-*8 (same); *Miller*, 2002 U.S. Dist. LEXIS 147239, at *6-*7, *11-*12 (same); *Time Warner Cable v. Fland*, No. 97 Civ. 7197 (BSJ)(SEG), 1999 U.S. Dist. LEXIS 21155, at *10 (S.D.N.Y. Dec. 3, 1999) ("[W]hen it is possible to draw a reasonable inference regarding how long the illegally modified converter was used [the Court should calculate statutory damages using] a set sum per month, reflecting the cost of the additional programming capable of having been illegally received, multiplied by the number of months the modified converter was used.").  Further, although Defendant may have sold additional unauthorized descramblers to other purchasers, Plaintiff has only established in this case that Defendant sold two unauthorized descramblers to an ACI investigator for a total of $310.  This makes it extremely difficult, if not impossible, for the Court to make assumptions regarding the extent of Plaintiff's actual damages that resulted from Defendant's violations.

Another approach used by courts, in determining statutory damages, is to award plaintiffs a flat sum based on the "circumstances of the case" rather than attempting to estimate lost income. *Cablevision Sys. N.Y. City Corp. v. Collins*, No. 01 Civ. 10954 (RO)(FM), 2004 U.S. Dist. LEXIS 12346, at *11 (S.D.N.Y. June 29, 2004); *see also, e.g.*, *Charter Communications*

*Entm't I, LLC v. Rodriguez*, 425 F. Supp. 2d 282, 285 (S.D.N.Y. 2006) (rejecting plaintiff's

claim for statutory damages based on estimated lost revenue as "speculative," and instead

awarding plaintiff a flat sum); *Cablevision Sys. N.Y. City Corp. v. Torres*, No. 02 Civ. 7602

(AJP), 2003 U.S. Dist. LEXIS 15524, at *14-*15 (S.D.N.Y. Sept. 9, 2003) (awarding plaintiff

flat amount for each sale or distribution of seventeen descramblers and for personal use of one

descrambler); *Cablevision Sys. N.Y. City Corp. v. Leath*, No. 01 Civ. 9515 (LTS), 2002 U.S.

Dist. LEXIS 13768, at *13 (S.D.N.Y. July 26, 2002) (awarding plaintiff flat sum of damages

where, *inter alia*, there was no evidence as to when defendant began to use the descrambler);

*Mountain Cable Co. v. Choquette*, 53 F. Supp. 2d 107, 111-12 (D. Mass. 1999) (awarding

plaintiff flat amount of damages under Section 553 where plaintiff's estimated losses were based

on "numerous assumptions regarding both the length of time [defendant] intercepted plaintiff's

signals and the number and value of cable services used by [defendant's] tenants"); *Time Warner

Cable v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997) (noting that under Section 605, "as a

rule, courts in this district faced with the unauthorized sale or modification of devices to aid in

the illegal receipt and broadcast of a cable program simply award the minimum statutory

amount").

Courts' discretionary awards of statutory damages under both Sections 553 and 605 have

varied widely, from the minimum permitted, *see Barnes*, 13 F. Supp. 2d at 548 (awarding

statutory minimum pursuant to Section 605 when defendant purchased one cable theft device), to

the maximum, *see Cablevision Sys. N.Y. City Corp. v. Flores*, No. 00 Civ. 5935 (GEL)(GWG),

2001 U.S. Dist. LEXIS 9351, at *12 (S.D.N.Y. July 6, 2001) (awarding plaintiff statutory

maximum under Section 605 where defendant unlawfully received cable programming), to

amounts in between, *see Rodriguez*, 425 F. Supp. 2d at 285 (awarding plaintiff $6,000 where

defendant possessed and used four illegal descramblers); *Choquette*, 53 F. Supp. 2d at 112

(awarding plaintiff $3,000 pursuant to Section 553 where defendant-landlord intercepted cable

services and distributed them to two apartment units plus his own home); *Communications*

*Entm't I, LLC v. Shaw*, 163 F. Supp. 2d 121, 125  (D. Conn. 2001) (reducing statutory damages

award under Section 605 to $1,500 where, *inter alia*, defendant returned the modified cable

converter to plaintiff).  In determining an appropriate amount of damages, courts have taken into

consideration both the "seriousness" of defendants' violations and the "scale" of his or her

illegal activity.  *Choquette*, 53 F. Supp. 2d at 112 ; *see also Cablevision Sys. N.Y. City Corp. v.*

*Rosa*, No. 01 Civ. 4822 (GEL)(JCF), 2002 U.S. Dist. LEXIS 6140, at *12 (S.D.N.Y. Apr. 3,

2002) (noting that "statutory damages should reflect the severity of the violation").

 Under the circumstances of this case, this Court recommends that $8,000 (rather than the

maximum of $10,000, as sought by Plaintiff) would be a "just" award, pursuant to Section

553(c)(3)(A)(ii).  This amount is somewhat higher than the flat sum of $6,000 recently awarded

by the Court in *Communications Entertainment v. Rodriguez*, where the defendant possessed and

used similar unauthorized descrambling devices, *see* 425 F. Supp. 2d at 285 (awarding such

damages under Section 605, for defendant's possession and use of four unauthorized devices to

receive and/or intercept plaintiff's cable signals), but where there was no evidence of illicit sales

activity, *see id.* at 284-85, as there is here.

 With respect to Plaintiff's application for enhanced damages, the Court must first

determine the extent to which Defendant's unlawful conduct was "willful," and then whether any

violations were for Defendant's personal financial gain.  Pursuant to Section 553(c)(3)(B), if

"the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." 47 U.S.C. § 553(c)(3)(B).

"Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference to its requirements.'" *Lokshin*, 980 F. Supp. at 114 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985)). Although there is no evidence that Defendant admitted an intention to violate the Communications Act, it can be inferred from the evidence presented that Defendant knew or should have known that his sale of unauthorized decoders was unlawful, as Plaintiff apparently did not grant him permission to sell cable descramblers. Further, it may be reasonably inferred from the circumstances of Defendant's known sales transactions, including where they took place (in Defendant's apartment building), the inappropriate packaging provided for one of the sales (*i.e.*, a black plastic bag), the lack of information regarding this business on Defendant's business card, and the imprecision of the amounts charged, that Defendant recognized the illicit nature of the sales.

Furthermore, as Defendant twice collected payments from the investigator, it is reasonable to infer that Defendant sold unauthorized decoders for his financial benefit. *Cf. Int'l Cablevision, Inc. v. Noel*, 859 F. Supp. 69, 79 (W.D.N.Y. 1994) (finding that there was "nothing in the record to establish that [Defendant's] purpose was to profit financially from his descrambler sales," considering the defendant's statement to an undercover investigator that "he did not make any money selling the [unauthorized] descramblers, but that he 'just like[d] screw[ing] the cable company'"), *vacated by*, 75 F.3d 123 (2d Cir. 1996). In this case, there is

no evidence to suggest that Defendant sold the two unauthorized descramblers to the investigator for any reason *other than* "commercial advantage or private financial gain," in willful violation of the law.  47 U.S.C. § 553(c)(3)(B).  Moreover, a "court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct."  *Olmo*, 977 F. Supp. at 589 (citing *Fallaci v. The New Gazette Literary Corp*., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983)).

Because there is no evidence that Defendant "was engaged in large scale, sophisticated and long-running scheme to defraud [P]laintiff," *Bravo*, 1996 U.S. Dist. LEXIS 22462, at *12, it would be unreasonable to award Plaintiff the greatest permissible damages pursuant to Section 553(c)(3)(B) for willful violation of the Communications Act, *see Olmo*, 977 F. Supp. at 590 (rejecting plaintiff's demand for maximum amount of enhanced damages permitted under Section 605 as excessive in light of the "relatively small scale of [defendant's] unauthorized modification scheme," where defendant had modified two cable boxes).  Nevertheless, "[b]ecause of the difficulty in detecting unlawful interception, the widespread problem of piracy . . ., and the need for an award sufficient to deter future piracy by defendant[] and others," it is important to impose an award that is not only reasonable, but also one that will deter such conduct in the future.  *Lokshin*, 980 F. Supp. at 113, 115.

Where courts have confronted willful violations of the Communications Act, and acknowledged the need to deter such conduct, some have decided not to award enhanced damages at all, while some have awarded enhanced damages in amounts exceeding $20,000. *See Garden City Boxing Club, Inc. v. Andino*, No. 05 Civ. 10003 (LTS)(JCF), 2006 U.S. Dist. LEXIS 39634, at *12 (S.D.N.Y. June 14, 2006) (awarding additional $25,000 of enhanced

15

damages for willfulness, pursuant to 47 U.S.C. § 605, because Defendants illegally intercepted and transmitted a championship boxing match, and showed the match to patrons of defendants' sports bar, without a contractual arrangement with Plaintiff, which had exclusive rights to transmit and broadcast the match); *Rosa*, 2002 U.S. Dist. LEXIS 6140, at *17 (awarding plaintiff $9,430 based on estimated lost profits and the same amount in enhanced damages for a total of $18,860, where court found that plaintiff had committed at least two distinct violations of Section 605, since he possessed two illegal descramblers); *Choquette*, 53 F. Supp. 2d at 113 (awarding enhanced damages of $3,000 where, over the course of several years, a landlord distributed illegally intercepted cable service to his tenants as part of their rent); *Olmo*, 977 F. Supp. at 589-90 (awarding $500 in enhanced damages for willfulness per violation totaling $1,000, where defendant modified two descramblers); *Lokshin*, 980 F. Supp. at 110 (declining to adopt recommendation that enhanced damages of $10,000 be imposed, and instead awarding enhanced damages in the amount of $1,500, where defendant received free services for over six years); *Bravo*, 1996 U.S. Dist. LEXIS 22462, at *12 (concluding that the "goals of punishment, restitution and deterrence [would] be more than adequately satisfied" by the imposition of the minimum statutory damages for each violation under Section 605, where plaintiff sold seven converters); *see also Charter Communications Entm't I, LLC v. Burdulis*, 367 F. Supp. 2d 16, 33 (D. Mass. 2005) (noting that "the amount of enhanced damages that have been awarded by the courts appears to be somewhat arbitrary and, for the most part, not based on any specific articulated factors").

Based on the extensive range in damages awarded for willful violations of the Communications Act, and considering the particular circumstances of this case, I find that it

would be reasonable to increase Plaintiff's damages in an amount of $5,000.  Such an award

would not be excessive here, given the combination of violations present in this case –

specifically, Defendant's own unauthorized receipt of premium programming, combined with at

least two illegal sales for apparent financial gain.  *Cf. Time Warner Cable v. Bleeker Parking

Corp.*, No. 99 Civ. 3559 (AKH)(KNF), 2001 U.S. Dist. LEXIS 17865, at *14 (S.D.N.Y. Oct. 30,

2001) (finding that, although Defendant intercepted Plaintiff's "cable signal with an

unauthorized device, [and] deliberately avoided monthly cable charges, it did not sell devices or

equipment which would permit unauthorized access to cable channels . . . . Therefore, since

[Defendant's] violation was not for purposes of private financial gain as those words are used in

the statute, an award of enhanced statutory damages would be excessive in this case.").

## II.    PLAINTIFF SHOULD BE AWARDED
##        $4,523.12 IN ATTORNEYS' FEES AND COSTS.

Plaintiff also seeks an award of attorneys' fees and costs in the total amount of $4,523.12.

(Proposed Findings ¶ 41-42; *see also* Cassell Aff. ¶ 11.)  The Communications Act provides that

the Court may "direct the recovery of full costs, including awarding reasonable attorneys' fees to

an aggrieved party who prevails."  47 U.S.C. § 553(c)(2)(C).  When fixing a reasonable rate for

attorneys' fees, courts may consider and apply "market rates 'prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience, and reputation.'"

*Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886,

896 n.11 (1984)).  In addition, a court may rely on its "'own knowledge of private firm hourly

rates in the community'" in determining reasonable attorneys' fees.  *Ass'n for Retarded Citizens

of Conn., Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) (quoting *Miele v. N.Y. State Teamsters

Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).  The Second Circuit also

17

requires a party seeking attorneys' fees to support that request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

In prosecuting this action against Defendant, Plaintiff engaged the services of Lefkowitz, Hogan & Cassell, L.L.P.  On behalf of that firm, Michael D. Cassell, Esq. ("Cassell") has submitted an affidavit to the Court setting forth:  (1) the names of the attorney and paralegals who worked on this matter; (2) the professional experience of those persons; (3) the number of hours each devoted to this action and the nature of the work performed; and (4) the fee charged for the work performed.  (Cassell Aff. ¶¶ 3-10.)

The record shows that Plaintiff was charged $1,423.00 for 7.40 hours of time spent by Cassell in analyzing and reviewing the file, drafting the Complaint, reviewing Court correspondence, drafting, reviewing, and revising default judgment papers and affidavits, and participating in telephone conferences with the Court and Defendant.  (Cassell Aff. ¶ 6; Proposed Findings, Ex. F.)  In addition, Plaintiff was charged $237.50, for 2.5 hours spent by Janine P. Zabbia, a paralegal, in drafting, revising, and reviewing the default application, certificates of service, and a letter to Defendant.  (Cassell Aff. ¶ 7; Proposed Findings, Ex. G.)  Plaintiff was also charged $152.00 for 1.6 hours spent by Susan A. Weindler, another paralegal, in reviewing and revising the Summons, Civil Cover Sheet and Rule 7.1 Statement in preparation for filing Plaintiff's Complaint, drafting letters and the Certificate of Service for ECF filing, and reviewing the Affidavit of Service.  (Cassell ¶ 8; Proposed Findings, Ex. H.)  Thus, the total attorneys' fees charged to Plaintiff was $1,812.50.

Based upon the record and the Court's familiarity with prevailing law firm rates in the New York City area, the requested attorneys' fees appear to be reasonable. *See Time Warner Cable v. Safian*, No. 99 Civ. 9517 (JSM)(DFE), 2001 WL 1664067, at *4 (S.D.N.Y. Nov. 30, 2001) (awarding $1,214.50 in attorneys' fees); *Barnes*, 13 F. Supp. 2d at 549 (awarding $2,651.25 in attorneys' fees); *Lokshin*, 980 F. Supp. at 115 (awarding $1,523.06 in attorneys' fees). I therefore recommend that Plaintiff be awarded its requested attorneys' fees in the amount of $1,812.50.

Plaintiff also seeks to recover costs, consisting of $250.00 in filing fees and $32.33 in Federal Express fees. (Cassell Aff. ¶ 9; Proposed Findings, Ex. I.) Plaintiff's request for costs totaling $282.33 is also reasonable and should be granted. *Cablevision Sys. N.Y. City Corp. v. Cruz*, No. 00 Civ. 5931 (JSM)(FM), 2001 U.S. Dist. LEXIS 1160, at *15 (S.D.N.Y. July 23, 2001).

Finally, Plaintiff requests an award of $2,428.29 for 34 hours of ACI's services, which included case intake, travel expenses, telephone calls, the purchase and testing of descramblers, and report, audio, video and photograph compilation and preparation. (Cassell Aff. ¶¶ 9-10; Radzinsky Aff. ¶ 14; Proposed Findings, Ex. E.) Pursuant to 47 U.S.C. § 553, a court may award "recovery of full costs, including . . . reasonable attorneys' fees." 47 U.S.C. § 553(c)(2)(C). Courts, however, disagree as to whether the statute contemplates recovery of investigative fees. *Compare Garden City Boxing Club, Inc. v. Rojas*, No. 05 Civ. 1047 (DGT)(MDG), 2006 U.S. Dist. LEXIS 95617, at *24 (S.D.N.Y. Oct. 12, 2006) (awarding $100 of the $350 of investigative costs, under Section 605, because the fees sought by plaintiff were found to be "excessive"); *Time Warner Cable v. Evans*, No. 00 Civ. 1385 (DAB), 2001 U.S.

19

Dist. LEXIS 16402, at *13 (awarding plaintiff $3,146.50 for investigative costs); *Joe Hand Promotions, Inc. v. Kossakowska*, No. 00 Civ. 2531 (NG), 2001 U.S. Dist. LEXIS 26021, at *31 (E.D.N.Y. Nov. 7, 2001) (noting that at least one court in this circuit has awarded plaintiff investigative fees pursuant to Section 553(c)(2)(C)); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (determining that investigator's "requested hourly rate of $75.00" was within "the reasonable range of rates paid in this District for investigators, certain types of consultants and paralegals"), *with J & J Sports Prods., Inc. v. Guerra*, No. 06 Civ. 164 (CPS)(RML), 2006 U.S. Dist. LEXIS 95450, at *20-*21 (E.D.N.Y. July 6, 2006) (declining to award investigator's fee under Section 605 "because there is no legal basis for an award of such fees as an element of costs"); *Kingvision Pay-Per-view Ltd. v. Cardona*, No. 03 Civ. 0389 (GBD)(FM), 2004 U.S. Dist. LEXIS 12347, at *12 (S.D.N.Y. June 30, 2004) (declining to award investigative fees under 605 because "[t]here is no provision for a prevailing party to be awarded the cost of its investigator"); *Joe Hand Promotions, Inc. v. Soto*, No. 01 Civ. 0329 (GBD)(AJP), 2003 U.S. Dist. LEXIS 22560, at *9 (S.D.N.Y. Dec. 17, 2003) (noting "there is no authority to award 'investigative fees' as costs" under Section 605).

Here, Plaintiff has provided a detailed invoice of the charges it incurred for ACI's services, and the fees appear to be reasonable (approximately $71 per hour).  For these reasons, I recommend that, in this case, investigative costs be awarded in the amount sought ($2,428.29). *See Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01 Civ. 5412 (SJF)(WP), 2007 WL 952036, at *12 (E.D.N.Y. Mar. 27, 2007) (noting that "emerging view is that, if recovery for [investigative] fees is to be awarded, the application must be supported by information as to the reasonableness of the rates charged and the services performed"); *cf. Int'l Cablevision, Inc. v. Noel*, 982 F. Supp.

904, 918 (W.D.N.Y. 1997) (finding that expenses properly fell under the applicable statute, but that "[t]here is no reason to allow a prevailing party to recover expenses it has incurred for investigative work without having to describe the precise services performed, the time spent, the rate per hour charged for the services, and the standard charge for such services in the district").

<u>**CONCLUSION**</u>

For all the foregoing reasons, I recommend that, on the default judgment, Plaintiff be awarded $13,000 in statutory damages, $1,812.50 in attorneys' fees, $282.33 in service and filing fees, and ACI's investigation fees in the amount of $2,428.29, for a total of $17,523.12.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Leonard B. Sand, United States Courthouse, 500 Pearl Street, Room 1650, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sand. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      June 6, 2007

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

<u>Copies To</u>:

Hon. Leonard B. Sand
United States District Judge

Shaun K. Hogan, Esq.
Lefkowitz, Hogan & Cassell, LLP
350 Jericho Turnpike, Suite 300
Jericho, NY 11753

Mr. Pedro Sanchez
1760 Madison Avenue, Apt. 302
New York, NY 10029